1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

8

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9
10
11

LUIS A. ALVAREZ-ORELLANA,

12
                    Plaintiff,

13

14            v.

15

CITY OF ANITOCH, et al.,

16

17                   Defendants.

Case No.:  12-cv-04693 JSC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY OF ANTIOCH, LOREN BLEDSOE AND ALLAN CANTANDO'S MOTION TO DISMISS**

18

19          Plaintiff Luis Alvarez-Orellana alleges he was arrested and jailed for two weeks based

20   upon a 30-year old recalled warrant.  Now pending before the Court is Defendants' Rule

21   12(b)(6) Motion to Dismiss.  Defendants contend that Plaintiff's Complaint fails to state

22   facts sufficient to sustain any of Plaintiff's claims against Defendants City of Antioch

23   ("Antioch"), Police Officer Loren Bledsoe, or Police Chief Allan Cantando.  Defendants

24   further argue that Plaintiff's Complaint is so deficient as to render amendment futile.

25          After carefully considering the pleadings and evidence submitted by the parties, and

26   having had the benefit of oral argument on January 31, 2013, the Court GRANTS in part and

27   DENIES in part Defendants' Motion to Dismiss.

28

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

## FACTUAL & PROCEDURAL BACKGROUND

This action arises out of an incident on September 7, 2011 wherein Plaintiff Luis Alvarez-Orellana was pulled over by police officer Defendant Loren Bledsoe while driving in Antioch, California.  (Dkt. No. 1 at ¶ 13.)  Upon running a background check on Plaintiff, Officer Bledsoe discovered an outstanding warrant for Plaintiff issued by Los Angeles County in 1982.  (*Id.*)  Plaintiff informed Officer Bledsoe that he had completed his sentence, satisfied the conditions of his probation and therefore was not subject to any outstanding warrant; Officer Bledsoe nevertheless detained Plaintiff and transported him to the Antioch Police Department.  (*Id.* at ¶¶ 14-15.)  Later that day, Officer Bledsoe transported Plaintiff to the Martinez Detention Facility for booking.  (*Id.* at ¶ 15.)

Plaintiff remained at the Martinez Detention Facility for approximately two days before being transferred to the West County Detention Facility in Richmond, CA.  (*Id.* at ¶ 17.)  Approximately five days later, on September 14, 2011, Plaintiff was relocated to the Twin Towers Correctional Facility in Los Angeles County, where he was held for an additional seven days.  (*Id.* at ¶ 18.)  On September 21, 2011, Plaintiff appeared before the Los Angeles Superior Court, received an apology from the court for his mistaken detention, and was ordered released.  (*Id.* at ¶ 22.)  In total, Plaintiff was detained for 14 days.

Plaintiff alleges that subsequent to his 1982 conviction, he had been detained on multiple occasions for unrelated offenses but that the resulting background checks had not revealed any outstanding warrant.  (*Id.* at ¶ 14.)  He further contends that during his arrest, he informed Defendant Bledsoe of these facts.  In his Opposition to Defendants' Motion to Dismiss ("Opposition"), Plaintiff alleges further:

> The warrant was mistakenly entered into the Los Angeles Superior Court data system some time after Plaintiff's conviction in August 3, 1982, but was not discovered until October 27, 1995 when Co-defendant  West County Detention Facility ["WCDF"] … contacted the Los Angeles Superior Court regarding a warrant for Plaintiff who was then in custody at the Facility in an unrelated matter. In response to WCDF's inquiry, the Los Angeles Superior Court issued an Order informing the West "City" Detention Facility [sic] that … "Defendant is ordered released on this case only. A copy of this minute order is faxed to …"

1         (Exhibit B of Plaintiff's complaint) The alleged bench warrant was recalled as

2    of October 27, 1995 and, copies of the order were forwarded to the WCDF via

     facsimile and by first class mail.

3    (Dkt. No. 14 at 2:2-13.)

4         On September 7, 2012, Plaintiff filed his Complaint alleging seven causes of action

5    arising out his arrest and detention: (1) a 42 U.S.C. § 1983 claim for violations of his First,

6    Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights (Dkt. No. 1 at ¶ 35); (2) a 42

7    U.S.C. § 1983 *Monell* claim for supervisory and municipal liability (*id.* at ¶¶ 38-39); (3)

8    assault and battery (*id.* at ¶¶ 41-42); (4) intentional affliction of emotional distress (*id.* at ¶

9    45); (5) negligence (*id.* at ¶ 47); (6) negligent selection, training, retention, supervision,

10   investigation, and discipline (*id.* at ¶¶ 49-52); and (7) respondeat superior liability (*id.* at ¶¶

11   55-56).  Plaintiff names the City of Antioch; Loren Bledso, individually and in his capacity

12   as a police officer for the City of Antioch; Allan Cantando, individually and in his official

13   capacity as chief of police for the City of Antioch; David Livingston, individually and in his

14   official capacity as Sheriff for the County of Contra Costa; Leroy Baca, individually and in

15   his official capacity as Sheriff for the County of Los Angeles; L. Walker, individually and in

16   his official capacity as clerk for the Los Angeles County Superior Court; C. Nedar

17   individually and in his official capacity as clerk for the Los Angeles County Superior Court;

18   the Los Angeles Superior Court Clerk's Office; and Does 1-30.

19        Defendants the City of Antioch, Officer Loren Bledsoe, and Antioch Chief of Police

20   Allan Cantando filed the underlying Motion to Dismiss pursuant to Rule 12(b)(6).  (Dkt. No.

21   7.)  Although Plaintiff initially brought seven causes of action, he has explicitly abandoned

22   his state-law based claims—the third through seventh causes of action—conceding that he

23   had failed to satisfy the claim presentation requirements of the California Tort Claims Act

24   (CA Gov't Code § 945.4).  (Dkt. No. 14 at 11.)  Likewise, Plaintiff withdrew his Section

25   1983 claims for violation of his First, Fifth, Eighth, and Ninth Amendment rights.  (*Id.* at 5,

26   8.)  Finally, Plaintiff withdrew his request for punitive damages.  As a result, the only claims

27   remaining for consideration in the present motion are Plaintiff's Section 1983 claims brought

28

under the Fourth and Fourteenth Amendments against Defendants, as well as his claim for

*Monell* liability brought against Defendants the City of Antioch and Chief Cantando.

### LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted).

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"), *cert. denied*, 132 S. Ct. 2101 (2012). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a

1  plausible claim for relief ... [is] a context-specific task that requires the reviewing court to

2  draw on its judicial experience and common sense." *Id.* at 663-64.

3       If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

4  request to amend the pleading was made, unless it determines that the pleading could not

5  possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th

6  Cir. 2000) (en banc) (internal quotations and citations omitted).

7                                    **DISCUSSION**

8       Three issues remain pending for the Court's determination: (1) whether Plaintiff has

9  stated a Section 1983 claim for violation of his Fourth and Fourteenth Amendment rights; (2)

10 whether Plaintiff has adequately stated a claim for *Monell* liability against the City of

11 Antioch and Chief Cantando; and (3) whether Plaintiff's claims against Chief Cantando and

12 Officer Bledsoe in their official capacities should be dismissed as redundant of his claims

13 against the City.

14 **I.  Sufficiency of Plaintiff's § 1983 Allegations**

15      Plaintiff's first cause of action is brought under 42 U.S.C. § 1983 and alleges

16 violations of rights secured by the Fourth and Fourteenth Amendments to the United States

17 Constitution.  Section 1983 imposes civil liability on any person who, under color of law,

18 subjects any citizen to a deprivation of their Constitutional rights.  42 U.S.C. § 1983; *Leer v.*

19 *Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988) (finding two "essential proof requirements

20 upon a [§ 1983] claimant: (1) that a person acting under color of state law committed the

21 conduct at issue, and (2) that the conduct deprived the claimant of some right…protected by

22 the Constitution or laws of the United States.")  Therefore, the "first step in any [§ 1983]

23 claim is to identify the specific constitutional right allegedly infringed," *Albright v. Oliver*,

24 510 U.S. 266, 271 (1994).  Because Plaintiff alleges several potential violations of his

25 constitutional rights, and each is subject to Defendants' Motion to Dismiss, this Order

26 considers each in turn.

27

28

United States District Court
Northern District of California

A. **Plaintiff's Fourth Amendment Claims**

Plaintiff alleges that Defendants infringed Plaintiff's "right to be free from unreasonable search and seizure," "right to be free from the use of excessive force by police officers," and the "right to be free from interferences with the zone of privacy, as protected by the Fourth…Amendment[]." (Dkt. No. 1 at ¶ 35a, c, f.)

1. *Plaintiff's Right to Freedom From Unreasonable Search and Seizure*

Defendants challenge Plaintiff's 'unreasonable search and seizure' allegation, arguing that "an arrest pursuant to a facially valid warrant does not violate the Constitution." (Dkt. No. 7 at 5:18 (citing *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979))). This argument fails for two reasons.

First, the underlying premise of Defendants' argument—that Plaintiff has alleged that he was arrested pursuant to a facially valid warrant—is wrong. Viewing Plaintiff's allegations in the light most favorable to Plaintiff, as the Court must, the Complaint suggests that there was not a facially valid warrant supporting the arrest. Plaintiff alleges that following his 1982 conviction, he completed his sentence and satisfied the conditions of his probation and therefore was not subject to any outstanding warrants. (Dkt. No. 1 at ¶ 15.) Further, subsequent to his 1982 conviction he had been detained on numerous occasions for unrelated offenses, but the resulting background checks had never revealed any outstanding warrants. (*Id.*) Plaintiff also alleges that after being arrested and placed in Officer Bledsoe's patrol car, Officer Bledsoe "shared Plaintiff's background information with his patrol partner and said in a jeering tone, 'look what I got on this guy', [sic] which prompted his patrol partner to utter 'You should not do that', [sic] as they both laughed." (*Id.* at ¶ 15.) Additionally, Plaintiff alleges that the warrant for which he was arrested was initially mistakenly entered in the Los Angeles Superior Court data system, but in 1995 the mistaken warrant was recalled. (*Id.* at ¶¶ 21-22.) Finally, when Plaintiff appeared before the Los Angeles County Superior Court in September 2011, the court apologized for Plaintiff's mistaken detention and ordered him released. (*Id.* at ¶ 22.) These allegations support a

plausible inference that the 2011 arrest of Plaintiff was not based upon a facially valid warrant.

Plaintiff's Opposition includes additional allegations that further support an inference that the arrest was not based upon a facially valid warrant.  In particular, Plaintiff contends that neither his DMV nor FBI records (obtained following his release) reflect the existence of a valid warrant at the time of arrest on September 7, 2011.  (Dkt. No. 14 at 6-7.) Furthermore, while the arrest record prepared by Officer Bledsoe references the warrant for Plaintiff's arrest and identifies it as 'attached,' the actual warrant was not provided to Plaintiff pursuant to his Freedom of Information request.  (Dkt. No. 15 at 13.)  Thus, the record does not establish as a matter of law that Plaintiff was arrested based upon a facially valid warrant.  For this reason alone, Defendants' motion to dismiss the Fourth Amendment claim against Officer Bledsoe must be denied.

Defendants' argument also fails for a second reason.  So long as Plaintiff adequately alleges that he was arrested pursuant to an invalid warrant, he has established a violation of his Fourth Amendment rights regardless of the warrant's facial validity.  "If the *only* justification for an arrest is an invalid warrant, the arrest constitutes an 'unreasonable seizure' under the Fourth Amendment."  *Pitchford v. Borough of Munhall*, 631 F.Supp. 636, 650 (W.D. Penn. 2007); *see also Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568-69 (1971) (finding that where the warrant was invalid and the "arresting officer was not himself possessed of [sufficient probable cause]…petitioner's arrest violated his constitutional rights under the Fourth" Amendment);  *Hrovcik v. Sheahar*, 847 F.Supp. 1414, 1417 (E.D. Ill. 1999) (holding that an arrestee's rights are violated if he is arrested and detained pursuant to an invalid warrant); *Murray v. City of Chicago*, 634 F.2d 365, 366 (7th Cir. 1980) ("It seems clear that appellant sustained a violation of constitutional rights by being arrested and detained pursuant to an invalid warrant.").  Here, the only justification for Plaintiff's arrest and 14-day detention is a warrant that—according to Plaintiff's allegations—was recalled 16 years earlier; that is, an invalid warrant.  Thus, he has sufficiently alleged that his arrest violated his Fourth and Fourteenth Amendment rights.

United States District Court
Northern District of California

7

The cases upon which Defendants rely are distinguishable.  Procedurally, *Baker v. McCollan*, 443 U.S. 137 (1979) involved a directed verdict after trial, not a motion to dismiss, and it was found as a matter of fact that the plaintiff was arrested pursuant to a facially valid warrant.  *Id.* at 141.   Moreover, the Supreme Court's analysis in *Baker* was grounded in the assumption that the warrant was in fact valid.  *Id.* at 143 ("Absent an attack on the validity of the warrant under which he was arrested . . . .").  Similarly, in *Erdman v. Chochise County*, 926 F.2d 877 (9th Cir. 1991), a summary judgment case, the plaintiff similarly conceded that the warrant was valid.  *Id.* at 882.  Finally, in *Case v. Kitsap County Sheriff's Dep't.*, 249 F.3d 921 (9th Cir. 2001), because the plaintiff again conceded that their arrest was pursuant to a facially valid warrant, the issue was whether the defendant officers were entitled to qualified immunity.  *Id.* at 926 ("Here, Case admits that the Oregon warrant was valid…Our analysis, then, turns to whether a reasonable officer could believe that he could arrest Case [on that] warrant.")  A qualified immunity inquiry is premature here since the allegations of the Complaint do not establish as a matter of law that Plaintiff was arrested pursuant to a facially valid warrant.  Accordingly, Defendants' motion to dismiss the unlawful seizure claim must be denied, at least as to the arresting officer, Loren Bledsoe.

On the other hand, Plaintiff's claim of unreasonable search and seizure against Defendants City of Antioch and Chief Cantando illustrates the Supreme Court's prohibition against "threadbare recitals of a cause of action's elements."  *Iqbal*, 556 U.S. at 663.  In neither his Complaint nor his Opposition does Plaintiff allege anything more specific against the City of Antioch or Chief Cantando than that they "had access to this information [i.e. that Plaintiff's 1982 warrant had been recalled in 1995] but, nevertheless, willfully and/or recklessly chose to ignore the same."  (Dkt. No. 14 at 5:14-15.)  Plaintiff's bald contentions that Chief Cantando "was aware, knew and had reasonable basis to learn and/or to believe that the alleged arrest warrant…was a stale warrant and/or…had been recalled or, had lapsed" are insufficient to state a claim against Chief Cantando.  (Dkt. No. 1 at ¶ 24.)  Because Plaintiff's claims against the City of Antioch are similarly conclusory, Plaintiff's

Section 1983 Fourth Amendment claims against Defendants the City of Antioch and Chief Cantando are dismissed with leave to amend.

### 2. *Plaintiff's Right to Freedom From Use of Excessive Force by Police Officers under the 4th Amendment and From Interferences with the Zone of Privacy*

In Plaintiff's initial Complaint he proposes two additional violations of his Fourth Amendment rights: that of his "right to be free from the use of excessive force by police officers" and of his "right to be free from interferences with the zone of privacy." Of these, Defendants' Motion addresses the former—"Plaintiff's complaint…states no facts whatsoever showing Officer BLEDSOE used any force at all against him…Plaintiff thus cannot maintain an excessive force claim under the Fourth Amendment"—but ignores the latter. (Dkt. No. 7 at 6:12-14.)

In his Opposition, however, Plaintiff fails to refute, reargue, or even raise these additional vehicles for Fourth Amendment liability. Therefore, due to Plaintiff's abandonment of these claims, the Court dismisses Plaintiff's claims of 'excessive force' and 'interference with the zone of privacy' with prejudice.

### B. Plaintiff's Fourteenth Amendment Claims

Within his Section 1983 cause of action, Plaintiff claims deprivation of his "right not to be deprived of life or liberty without due process of law," his "right to be free from the use of excessive force by police officers," and his "right to equal protection of the laws, as guaranteed by the Fourteenth Amendment." (*Id.* at b, c, d.)

### 1. *Plaintiff's Right to Due Process of Law*

Plaintiff's Complaint does not identify whether he is pursuing a procedural or substantive due process claim. Therefore, the Court's analysis proceeds as to both.

### a. *Substantive Due Process and Plaintiff's Right to Freedom From Use of Excessive Force by Police Officers under the 14th Amendment*

The Supreme Court has established that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,'

1   must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994)

2   (internal quotations omitted); *see also Graham v. Connor*, 490 U.S. 386, 388 (1989) (holding

3   that where a "free citizen[] claim[s] that law enforcement officials used excessive force in

4   the course of making an arrest…such claims are properly analyzed under the Fourth

5   Amendment's 'objective reasonableness' standard, rather than under a substantive due

6   process standard"). *Albright* explicitly extended *Graham*'s holding to substantive due

7   process claims stemming from arrests made pursuant to invalid warrants. *Albright*, 510 U.S.

8   at 275. The *Albright* Court held that the Fourth Amendment's protection against

9   unreasonable search and seizure—rather than the Fourteenth Amendment's guarantee of

10  substantive due process, "with its scarce and open-ended guideposts,"—was the appropriate

11  avenue to relief. *Id.* (internal citations and quotations omitted).

12      Therefore, the Court grants Defendants' Motion with respect to Plaintiff's substantive

13  due process claim as well as his claim for excessive force brought under the Fourteenth

14  Amendment.  Because the basis for this dismissal is found in law, rather than as the result of

15  insufficient factual pleadings, and therefore could not be rectified with additional allegations,

16  this dismissal is made with prejudice.

17              *b.  Procedural Due Process*

18      Plaintiff's pursuit of a procedural due process claim, while not forestalled by law,

19  falls for failure to allege facts sufficient "to state a claim to relief that is plausible on its

20  face." *Twombly*, 550 U.S. at 570.  Plaintiff has alleged that he suffered deprivation of his

21  liberty for a period of approximately fourteen days and that he has "incurred financial

22  expenses and lost income."  (Dkt. No. 1 at ¶¶ 15-18, 31.)  Plaintiff has failed, however, to

23  identify what procedural violation occurred, or which procedural step he was constitutionally

24  entitled to, but denied.  Therefore, the Court dismisses Plaintiff's procedural due process

25  claim with leave to amend.

26          *2.  Plaintiff's Right to Equal Protection of the Law*

27      In his Complaint Plaintiff alleges a violation of his "right to equal protection of the

28  laws."  (Dkt. No. 1 at ¶ 35.d.)  His Opposition, however, fails to even mention this claim

*United States District Court*
*Northern District of California*

10

1  despite Defendants' arguments against its validity.  Therefore, due to Plaintiff's

2  abandonment of his equal protection claim, the Court dismisses this claim with prejudice.

3  **II.      Sufficiency of Plaintiff's § 1983 *Monell* Allegations**

4          Section 1983 *Monell* liability is premised on a showing that some governmental

5  custom or policy, whether formally adopted or not, is responsible for the alleged

6  infringement on a plaintiff's constitutional rights or freedoms; i.e. a municipality's liability

7  cannot be grounded on a theory of respondeat superior.  *Monell v. Dep't of Soc. Services of*

8  *City of New York*, 436 U.S. 658, 690-91 (1978).  Municipal liability under *Monell* may be

9  established in any of three ways: (1) "the plaintiff may prove that a city employee committed

10  the alleged constitutional violation pursuant to a formal governmental policy or a

11  longstanding practice or custom which constitutes the standard operating procedure of the

12  local governmental entity;" (2) "the plaintiff may establish that the individual who

13  committed the constitutional tort was an official with final policy-making authority and that

14  the challenged action itself thus constituted an act of official governmental policy;" or (3)

15  "the plaintiff may prove that an official with final policy-making authority ratified a

16  subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*,

17  979 F.2d 1342, 1346–47 (9th Cir. 1992).

18          Plaintiff primarily seeks to proceed on the first basis and thus must establish that the

19  deprivation of his rights was attributable to enforcement of a municipal custom or policy.

20  Plaintiff alleges that the City of Antioch and Chief Cantando  had "been given notice on

21  repeated occasions of a pattern of ongoing constitutional violations and practices by [other

22  named] Defendant[s]…constituting flagrant disregard and dereliction of duties...issued for

23  the benefit and protection of persons involved in legal proceedings, such as Plaintiff here,"

24  and that despite such notice, the City of Antioch and Chief Cantando "demonstrated

25  deliberate indifference to this pattern and practices [sic] of constitutional violations."  (Dkt.

26  No. 1 at ¶ 38.)  "This lack of adequate supervisorial response," argues Plaintiff,

27  "demonstrates … the existence of an informal custom or policy which tolerates and promotes

28

United States District Court
Northern District of California

1   the continued disregard of, use of excessive force against and violation of civil rights of

2   persons by Defendants' employees." (*Id.*)

3        Although the Ninth Circuit has recently reaffirmed the ability of a plaintiff to plead

4   Section 1983 liability against a supervisor for deliberate indifference, in so doing it also

5   firmly reiterated that such pleadings "may not simply recite the elements of a cause of action,

6   but must contain sufficient allegations of underlying facts to give fair notice and to enable

7   the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

8   2011) *cert. denied*, 132 S. Ct. 2101 (2012).  Further, in *Henry A. v. Willden*, the court

9   identified that claims against supervisors must at least allege "personal knowledge of the

10  specific constitutional violations that led to Plaintiffs' injuries, or that [the supervisor] had []

11  direct responsibility to train or supervise the [individual employees]."  678 F.3d 991, 1004

12  (9th Cir. 2012).

13       Unlike in *Starr*, Plaintiff's allegations against Chief Cantando fail to provide anything

14  "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S.

15  at 678.  That is, Plaintiff has not met *Iqbal*'s plausibility standard by "plead[ing] factual

16  content that allows the court to draw the reasonable inference that the defendant is liable for

17  the misconduct alleged." *Id*.  In fact, supervisory liability was directly at issue in *Iqbal*, and

18  the Supreme Court held that "[i]n a § 1983 suit...the term 'supervisory liability' is a

19  misnomer [because] each Government official, his or her title notwithstanding, is only liable

20  for his or her own misconduct." *Iqbal*, 556 U.S. at 677.  Coupled with *Iqbal*'s oft-quoted

21  'facial plausibility' pleading standard, a plaintiff must offer more than "labels and

22  conclusions or...naked assertions" regarding a supervisor's involvement in constitutional

23  violations before they can establish supervisory liability in a Section 1983 suit. *Id.* at 678

24  (internal quotations and citations omitted).  Likewise, a plaintiff must submit factual

25  allegations depicting a municipality's custom, policy, or practice which caused a

26  constitutional deprivation in order to establish municipal liability under *Monell*.

27       Therefore, because Plaintiff has failed to provide any factual allegations regarding

28  personal misconduct of Chief Cantando, or a custom, policy or practice instituted by the City

United States District Court
Northern District of California

12

United States District Court
Northern District of California

of Antioch, which led to a violation of Plaintiff's constitutional rights, the Court grants Defendants' Motion with respect to Plaintiff's § 1983 claims under *Monell*.  Because we assume dismissal with leave to amend except where such leave would be futile, *Lopez*, 203 F.3d at 1127, the Court grants Plaintiff leave to amend with respect to this claim.

Plaintiff also implies pursuit of 'ratification' as a basis for *Monell* liability; however, Plaintiff's conclusory allegations regarding ratification do not rise to the level of 'plausibility' as required by *Iqbal*.  The Court therefore grants Defendants' Motion, without prejudice, regarding Plaintiff's claims of *Monell* liability due to ratification.

### III.    Official versus Individual Capacities

Plaintiff's Complaint names Defendant Bledsoe and Defendant Cantando both individually and in their official capacities as police officer and chief of police for the City of Antioch, respectively.  The Court has analyzed Officer Bledsoe's and Chief Cantando's individual liability as raised under the Fourth and Fourteenth Amendments (*supra* at I), as well as Chief Cantando's supervisory liability under *Monell* (*supra* at II) and now considers Plaintiff's claims against Officer Bledsoe and Chief Cantando in their official capacities, generally.

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. … Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal quotation and citations omitted).  "An official capacity suit against a municipal officer is equivalent to a suit against the entity." *Center for Bio–Ethical Reform, Inc. v. Los Angeles County Sheriff*, 533 F.3d 780, 799 (9th Cir. 2008).  "[T]he policies of the Police Department bec[o]me [the City's] policies because the policies set by the Department and its Chief may be fairly said to represent official City policy on police matters."  *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991) (internal citations and quotations omitted).

As both of Plaintiff's official-capacity claims against Defendants Bledsoe and Cantando are essentially suits against the same municipal entity, i.e. the City of Antioch, and that entity is independently named in this action, Plaintiff's claims are, indeed, redundant. Therefore, Plaintiff's claims against Officer Bledsoe and Chief Cantando in their official capacities are dismissed with prejudice.

## CONCLUSION

In light of the foregoing analysis, the Court GRANTS, in part, and DENIES, in part, Defendants' Motion to Dismiss.

Specifically, the Court DISMISSES with prejudice, due to abandonment, Plaintiff's Section 1983 claims against the moving Defendants for violation of his First, Fifth, Eighth, Ninth Amendment rights, as well as for violation of his right to freedom from excessive force under the Fourth and Fourteenth Amendments, violation of his zone of privacy under the Fourth Amendment, violation of his right to equal protection under the Fourteenth Amendment, and his claims for punitive damages.  The Court also DISMISSES with prejudice, as a matter of law, Plaintiff's claims against the moving Defendants for violation of his Fourteenth Amendment rights to substantive due process and freedom from excessive force.

The Court DISMISSES, without prejudice, Plaintiff's claims against Defendants the City of Antioch and Chief Cantando, in his individual capacity, for unreasonable search and seizure under the Fourth Amendment, Plaintiff's claims against Officer Bledsoe and Chief Cantando in their official capacities, Plaintiff's claims for violation of his right to procedural due process under the Fourteenth Amendment as well as Plaintiff's claims for supervisory or municipal liability under *Monell*, or on the basis of ratification.

Lastly, the Court DENIES Defendants' Motion with respect to Plaintiff's Section 1983 claim against Defendant Officer Bledsoe for unreasonable search and seizure under the Fourth Amendment.  Any amended complaint shall be filed on or before February 21, 2013.

This Order disposes of  Dkt. No. 7.

United States District Court
Northern District of California

14

**IT IS SO ORDERED.**

Dated: February 1, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California