UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS A. ALVAREZ-ORELLANA,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF ANTIOCH, *et al.*,<br><br>　　　　Defendants.<br>_____/ | No. C-12-4693 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**(Docket No. 51)** |

Plaintiff Luis A. Alvarez-Orellana ("Plaintiff" or "Alvarez") filed an action against Defendant David O. Livingston ("Defendant" or "Livingston") and others in connection with an incident where Plaintiff was arrested and detained for 14 days based on a recalled warrant. Plaintiff brings a § 1983 claim asserting that Livingston violated both his Fourth Amendment right against unreasonable search and seizure and his Fourteenth Amendment right to Procedural Due Process. Plaintiff is naming Livingston, who is the Sheriff of Contra Costa County, in both in his individual and official capacities. Pending before the Court is Livingston's motion to dismiss Plaintiff's § 1983 claims against him. *See* Defendant's Motion to Dismiss. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Livingston's motion to dismiss.

## I. FACTUAL & PROCEDURAL HISTORY

On September 7, 2011, Plaintiff Luis A. Alvarez-Orellana was driving in Antioch, CA (located in Contra Costa County) when Antioch Police Officer Loren Bledsoe ("Bledsoe") pulled him over for a routine traffic violation. First Amended Complaint ("FAC") ¶ 16. Bledsoe

1  conducted a background check which allegedly indicated an outstanding arrest warrant for Plaintiff
2  stemming from a misdemeanor conviction in 1982. *Id.* ¶ 17. Plaintiff informed Bledsoe that the
3  report should not show any outstanding warrant since he had "completed a 39 days sentence [in
4  connection with the 1982 conviction] and had complied with all conditions of his three years
5  probation." *Id.* ¶ 14. Plaintiff also informed Bledsoe that in the years since his 1982 conviction, he
6  had been detained on three separate occasions. *Id.* When background checks were conducted on
7  those occasions, "he was never re-arrested for any warrants stemming from his August 3, 1982
8  misdemeanor conviction."[1]  *Id.*

9  Specifically, on one such occasion in 1995, Plaintiff was detained in Contra Costa County.
10 *Id.* ¶ 25. During the 1995 detainment, the 1982 warrant showed up in the background check, but
11 was determined by an unidentified party to be a clerical error. *Id.* Records Plaintiff has
12 subsequently requested from Los Angeles Superior Court show that in 1995, that court transmitted
13 an order to West County Detention Facility ("WCDF") in Contra Costa County indicating that the
14 warrant had been recalled and Plaintiff should be released. *Id.* ¶ 16. The court order dated for
15 October 27, 1995 stated that a "BW" was recalled and that the Los Angeles Superior Court "finds
16 that the defendant is in custody in Contra Costa County. The Defendant is ordered released on this
17 case only."[2]  *Id.*, *see also* Docket No. 46 at Ex. B.

18 After the 2011 arrest that is at issue here, Plaintiff was taken to the Antioch Police station
19 and was transferred to Martinez Detention Facility ("MDF") in Martinez, CA. *Id.* ¶ 15. After
20 staying at MDF for two days, Plaintiff was transported to WCDF in Richmond, CA for another five
21 days. *Id.* ¶ 24. Both of these facilities operate under the supervision of Defendant Livingston, who
22 is the sheriff of Contra Costa County. *Id.* ¶¶ 23, 24. Livingston "is responsible for the
23 administration, supervision, and the training of officers who, (sic) are in turn, responsible for the

---

[1] Plaintiff alleges that he was detained on three separate occasions after his 1982 conviction. FAC ¶ 14. He indicates encounters with Contra Costa County law enforcement in 1995 and 1999, but does not provide a date for the third encounter. It is possible, but not particularly clear, that he is counting the 2011 arrest and detention at issue in this case as the third encounter.

[2] While not explicitly clarified by either party, this Court presumes that the "BW" listed on the 1995 court order stands for "Bench Warrant."

2

daily operations" of both MDF and WCDF. *Id.* Plaintiff does not allege that he at any time informed Defendant Livingston or Livingston's subordinates at MDF and WCDF that the 1982 warrant was invalid. Opp. at 7.

Plaintiff was subsequently transferred to Twin Towers Correctional Facility in Los Angeles, CA and was detained there for approximately seven more days. FAC ¶ 26. On September 21, 2011, Plaintiff was taken before Los Angeles Superior Court where the court "apologize[d] to Alvarez and informed him that it had all been a mistake." *Id.* ¶ 30. Plaintiff was ordered released from custody. *Id.* From the time of his initial arrest, Plaintiff was incarcerated for a total of 14 days. *Id.* ¶ 31.

After his arrest and detention, Plaintiff obtained a copy of arresting officer Bledsoe's arrest report pursuant to the California Public Records Act ("CPRA"). *Id.* ¶ 17. The CPRA report showed that Plaintiff was arrested based upon an "Outside Warrant - Felony" ("O/W-F"). *See* Docket No. 46 at Ex. E, 3. Plaintiff also requested a DMV report and a FBI report, neither of which indicate arrest warrants in his name. *See id.* at Ex. C & D.

While not alleged in Plaintiff's complaint, Defendant Livingston submitted two documents in connection with the instant motion.[3] The first is an acknowledgment form signed by Plaintiff during the time Plaintiff was being held in Contra Costa County. *See* Request for Judicial Notice ("RJN"), Docket No. 54, Ex. D. The acknowledgment form notifies Plaintiff of an arrestee's rights to a magistrate hearing pursuant to California Penal Code §§ 821 and 822. *Id.* The second document is a California Law Enforcement Telecommunications ("CLETS") report, on which Livingston contends his subordinates relied when taking Plaintiff into custody. *Id.* at Ex. A. The CLETS report seems to show that the report was generated by the Antioch Police Department on September 7, 2011 (Plaintiff's date of arrest), and reflects a "Felony Bench Warrant" issued on May 12, 1983 in Plaintiff's name. *Id.*

Plaintiff filed the instant suit on September 7, 2012. *See* Docket No. 1. On February 1, 2013, Judge Corley granted in part and denied in part a motion to dismiss filed by Defendants Bledsoe, City of Antioch, and Chief Allan Cantando. Docket No.22 at 10. Judge Corley dismissed

---

[3] Defendant Livingston filed a request for judicial notice of these two documents. Docket No. 54. Plaintiff did not oppose. Livingston's request for judicial notice is therefore **GRANTED.**

United States District Court
For the Northern District of California

1 Plaintiff's procedural due process claim with leave to amend since he failed to "identify what
2 procedural violation occurred, or which procedural step he was constitutionally entitled to, but
3 denied." *Id.* at 10:22-25. Plaintiff's substantive due process claim, however, was dismissed with
4 prejudice because his allegation of excessive force by police officers was properly brought under the
5 Fourth Amendment rather than the Fourteenth Amendment substantive due process clause. *Id.* at 9-
6 10.

7 On April 18, 2013, Plaintiff filed his First Amended Complaint in response to Judge Corley's
8 order. *See* FAC. On May 17, 2013, Defendant Livingston filed this motion to dismiss for failure to
9 state a claim. *See* Def.'s Mot. at 1.

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

### B. Plaintiff's Failure to State A Claim Against Livingston in his Individual Capacity

"Section 1983 imposes liability upon any person who, acting under the color of state law, deprives another of a federally protected right." *Karim-Panahi v. Los Angeles Police Dept.*, 839

1  F.2d 621, 624 (9th Cir. 1988) (citing 42 U.S.C. § 1983).  Under § 1983, "[a] supervisor may be liable [in his individual capacity] . . . only if there exists either: (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001); *see also Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (same).  For the reasons discussed below, Plaintiff has failed to plead sufficient facts to show that Livingston, in his individual capacity, has met either prong.

        1.       <u>Livingston's Personal Involvement in the Purported Constitutional Deprivation</u>

The first way § 1983 liability can be established against Defendant Livingston is to allege facts showing Livingston's personal involvement in the purported constitutional deprivation. *Jeffers*, 267 F.3d at 915.  In *Ashcroft v. Iqbal*, the Court specifically addressed supervisor liability under the context of § 1983.  556 U.S. 662, 675-78 (2009).  The Supreme Court noted that since "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates . . . a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676.  Given this, the Supreme Court rejected the argument that "a supervisor's mere knowledge of his subordinate's" actions is sufficient to allege § 1983 liability against a supervisor in his individual capacity. *Id.* at 677.  Instead, Plaintiff must allege some facts indicating Defendant's own participation in the alleged constitutional deprivation. *See Haines v. Brand*, C-11-1335 EMC, 2011 WL 6014459, at *3 (N.D. Cal. Dec. 2, 2011) (dismissing pro se litigant's § 1983 claims against managerial defendants, in their individual capacities because "Plaintiff concedes . . . that neither defendant played any known part in causing Plaintiff's injuries"). *See also Alston v. Cnty of Sacramento*, *Alston v. Cnty of Sacramento*, CIV S-11-2281 GEB, 2012 WL 2839825, at * 4 (E.D. Cal. July 10, 2012) report and recommendation adopted, 2:11-CV-2281 GEB GGH, 2012 WL 3205142 (E.D. Cal. Aug. 3, 2012) (granting defendants' motion to dismiss since defendants, as supervisors, were not at the scene of the purported constitutional violation and thus did not personally participate in the detention).

Plaintiff conclusorily asserts that Livingston had a hand in causing the alleged violations of Plaintiff's rights.  The only facts he advances in support is the fact that his 1995 and 1999 arrests did

not result in his detention on the invalid warrant from which it may be inferred that procedures existed in 1995 and 1999 to verify warrants but that these policies were subsequently abandoned or not followed. *Id.* However, these allegations do not establish Defendant Livingston's *personal* participation in causing Plaintiff's unlawful detention. Plaintiff does not assert that Livingston was present nor took any specific actions throughout Plaintiff's detention at MDF and WCDF. Indeed, Plaintiff concedes that "Livingston's individual participation in each of the three steps . . . is unknown at the present time." Opp. at 10. As to any contention Defendant Livingston otherwise caused the detention by promulgating or abandoning a policy or failing to train his officers, that is a matter which falls under the second prong of *Jeffers* and is discussed below.

Plaintiff requests that given the unlawful arrest and subsequent detention, this Court should allow Plaintiff to proceed with discovery to establish the merits of Plaintiff's claims against Livingston. *Id.* But without some *prima facie* showing of liability, the Court will not hold this motion in abeyance to allow discovery.[4]

2.   <u>Livingston's Liability For Failure to Train, Supervise, or Control His Subordinates</u>

As noted above, under the second prong of superior liability identified in *Jeffers*, a supervisor may also be liable under § 1983 if a sufficient causal connection can be established through "the supervisor's participation could include his own culpable action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (internal citations omitted) cert. denied, 132 S. Ct. 2101, 182 L. Ed. 2d 882 (U.S. 2012). In *Starr v. Baca*, the Ninth Circuit addressed the post-*Iqbal* and *Twombly* pleading standard in the context of supervisory liability.

In *Starr*, the plaintiff brought Eighth Amendment claims against the sheriff of a detention facility where he had been held, suing the sheriff in his individual capacity as a supervisor of the

---

[4] If, in the course of discovery with respect to the claims against the other Defendants, Plaintiff obtains information sufficient to state a claim against Defendant Livingston, Plaintiff may seek leave to amend at that time.

facility. *Id.* at 1204-05. Noting that allegations of deliberate indifference are sufficient to state an Eighth Amendment claim, the Ninth Circuit held that a supervisor may be liable "for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Id.* at 1207. The court held that the complaint was adequate to withstand a motion to dismiss because the plaintiff had pled that the sheriff was given several reports which indicated systematic problems in his county jails. *Id.* at 1208. The defendant did not take action to rectify these problems despite the reports. *Id.* The allegations of the reports and of the defendant's inaction were sufficient to state a claim for supervisory liability. *Id.*

*Moss v. U.S. Secret Service* also addressed the post-*Iqbal* and *Twombly* pleading standard in the context of supervisory liability. 711 F.3d 941, 967-68 (9th Cir. 2013). In *Moss*, anti-Bush protesters who were demonstrating President Bush's appearance at an event brought a claim against Secret Service Agents and their supervisors. *Id.* at 955-56. In an encounter with the Secret Service, the anti-Bush protestors were forcibly moved further away from President Bush's location. *Id.* The protestors alleged that the force used to move them away from President Bush was excessive and in violation of the Fourth Amendment. *Id.* at 556. In their complaint, the protestors named two supervisors who were not present at the protest as defendants. *Id.* The protestors alleged that these supervisors were liable because they "supervised and directed the police action and that they were responsible for the training, or lack thereof, that led to the force used against the protestors." *Id.*

In *Moss*, the Ninth Circuit held that while the protestors had pled sufficient facts alleging excessive force was used against them under the Fourth Amendment, they failed to establish the supervisors' roles in the use of excessive force. *Id.* at 968. In analyzing the protestors' complaint, the Ninth Circuit recognized that while a "supervisor [need not be] physically present when the injury occurred . . . plaintiffs nevertheless must allege *some* culpable action or inaction for which a supervisor may be held liable" – something the *Moss* plaintiffs failed to do. *Id.* (quoting *Starr v. Baca*) (internal quotations and citations omitted) (original emphasis added). In the complaint, the protestors had alleged that the supervisors were liable for the following reasons:

> First, the protestors allege that Ruecker, as "Superintendent of the Oregon State Police" was "responsible for directing the operations of the Oregon State Police and supervising the law enforcement officers

7

> and agents acting under his authority." Similarly, they allege that Rodriguez, as Captain of the Southwest Regional Headquarters of the Oregon State Police, was "responsible for directing the operations of said Headquarters and supervising the law enforcement officers and agents acting under his authority."
>
> . . .
>
> Finally, the protestors claim that "the use of overwhelming and constitutionally excessive force against them" was "the result of inadequate and improper training, supervision, instruction and discipline . . . under the personal direction . . . of the State and Local Police Defendants."

*Id.* The court noted that the first set of allegations "are merely recitations of the organizational role of these supervisors," and that the latter set were conclusory and lacking in additional factual content sufficient to indicate that the supervisors had a role in the purported constitutional deprivation. *Id.* The court found that the protestors failed to specify "which actions [the supervisors] directed or approved. In particular, [the protestors] do not allege that the supervisors directed or approved the tactics - the shoving, use of clubs, and shooting of pepper spray bullets - employed by the officers in moving the protestors." *Id.* Further, the plaintiffs failed to allege "facts . . . about the officers' training or supervision, nor do they specify in what way any such training was deficient." *Id.*

Here, Plaintiff has similarly failed to sufficiently plead factual content establishing how Livingston, as a supervisor, took culpable action or inaction which resulted in Plaintiff's purported constitutional deprivation. Plaintiff alleges the following about Defendant Livingston's role as a supervisor:

> [that Defendant] was aware, knew and had reasonable basis to learn and/or to believe that his subordinates at the Antioch Police Department engaged in a pattern and practice which was in violation of P.C. §§ 821, 822 and 1269b, and that [Defendant] deliberately failed to prohibit said pattern and practice, and further failed to properly train his subordinates into compliance with the mandates under P.C. §§ 821, 822 and 1269b thus subjecting Plaintiff's unlawful and delayed incarceration.[5]

---

[5] Plaintiff notes that this section of the complaint erroneously listed Antioch Police Department instead of Martinez Detention Facility and West County Detention Facility. Defendant Livingston only has authority and a supervisory role over the latter two facilities. *See* Opp. at 11.

8

1  FAC ¶ 43.  Plaintiff also argues in his opposition that Livingston's inaction and failure to train his
2  subordinates reflected:

> The deliberate indifference shown by custodial officer [sic] under Livingston [sic] watch covers all areas, from the taking of custody from police officers, to the checking on the reliability of the documentation establishing probable cause for detention, to the completion of forms imposing a duty on custodial officer to take detainee before a magistrate on misdemeanor violations, and finally, failing to check with the warrant issuing Court on the validity of the 30 years old warrant . . . it is not difficult to conclude that Sheriff Livingston has failed to adequately supervise and train his custodial subordinates, and that he has shown deliberate indifference to the due process rights violations resulting from his failure to competently supervise, train and discipline noncompliant officers.

10 Opp. at 12-13.  Plaintiff makes only conclusory allegations that Livingston knew or should have
11 known that his subordinates were engaging in a pattern or practice of not complying with Penal
12 Code sections 821, 822, and 1269b.[6]  Plaintiff has not pled facts indicating that Livingston was
13 notified of his subordinates' allegedly unconstitutional conduct.  Unlike in *Starr*, where the plaintiff
14 pled that the sheriff was notified of constitutional deficiencies through the reports, Plaintiff fails to
15 allege any specific facts indicating that Livingston was given any  notice that a pattern or practice
16 existed amongst his subordinates.[7]  As in *Moss*, Plaintiff's allegations that Livingston's actions and
17 failure to train his subordinates amount to deliberate indifference are similarly conclusory.
18         In light of the foregoing, Plaintiff has failed to "allege *some* culpable action or inaction for
19 which a supervisor may be held liable." *Moss*, 711 F.3d at 968 (original emphasis added).  Thus,

---

[6] Plaintiff alleges that Livingston failed to train his subordinates to follow proper procedures pursuant to California Penal Codes §§ 821, 822, and 1296b, and that he was thus denied a magistrate hearing to which he was entitled.  FAC ¶ 43.  However, as discussed further below, the purported failure to follow appropriate procedures is not dispositive since individuals arrested on felony warrants, as Livingston's subordinates believed Plaintiff to be, are not entitled to a magistrate hearing in the county of arrest, only in the county that issued the warrant.  *See infra* at 13-14.

[7] Plaintiff does make an argument that Defendant Livingston was constructively notified that the warrant was recalled via the 1995 court order. Opp. at 9.  Thus, Plaintiff argues that Defendant should have known that Plaintiff's detention on this warrant was unlawful.  *Id*.  He cites *Whirl v. Kern* as authority, where a sheriff was held liable for his failure to release a prisoner in his facility's custody after a court ordered for his release.  407 F.2d 781, 791 (5th Cir. 1969).  *Whirl* is distinguishable, however, because the order providing constructive notice that the plaintiff should have been released was sent to the jail contemporaneously with the challenged actions.  *Id*. at 795.  In this case, however, the 1995 court order recalling Plaintiff's warrant came 15 years prior to Defendant taking office.  There is no basis for inferring constructive notice.

9

Plaintiff's Fourth Amendment and Fourteenth Amendment claims against Defendant Livingston, in his individual capacity, must be dismissed.

C.  Plaintiff's Failure to State a Claim Against Livingston in His Official Capacity

Plaintiff also brings suit against Livingston in his official capacity. Under § 1983, "[a] local governmental entity is liable . . . when action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1473-74 (9th Cir. 1992) (quoting *Monell*, 436 U.S. at 691) (internal quotations omitted). "A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). In order to state a *Monell* claim against a supervisor in his official capacity, a plaintiff must allege "that the official (1) had final policymaking authority concerning the action alleged to have caused the particular constitutional or statutory violation at issue[;] and (2) was the policymaker for the local governing body for the purposes of the particular act." *Cortez v. Cnty. of Los Angeles*, 294 F.3d 1186, 1189 (9th Cir. 2002) (internal quotations omitted). The Ninth Circuit has recognized that sheriffs in California have final policy-making authority over county jail policies and thus may be subject to *Monell* liability claims. *Cortez*, 294 F.3d at 1189-90 (establishing that a California sheriff has final policy-making authority over county jails and prisons and may be liable in his official capacity); *see also Streit v. County of Los Angeles*, 236 F.3d 552, 561-63 (9th Cir. 2001) (holding a county liable because a sheriff, in his official capacity, oversees and implements procedures and policies for county jails and prisons).

A supervisor may be "found liable in his official capacity only if policy or custom . . . by a governmentally authorized decisionmaker . . . played a part in the violation of federal law." *Larez*, 946 F.2d at 646 (original brackets and citations omitted). Failure to train can constitute a policy or custom "only where the failure to train amounts to deliberate indifference to the rights of persons." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregard a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quoting *Board of Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 410 (1997)). "Thus, when city policymakers are on actual or

constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights, the [policymaker] may be deemed deliberately indifferent if [he or she] choose to retain that program." *Id.* Moreover, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* (quoting *Bryan Cnty.,* 520 U.S. at 409) (internal quotations omitted). A single incidence of unconstitutional activity is insufficient to establish a pattern to impose *Monell* liability for failure to train. *See City of Okla. v. Tuttle*, 471 U.S. 808, 823-24 (1985) (unlike the official municipal policy in *Monell*, where only one cited incidence is sufficient to allege that an unconstitutional policy has violated an individual's rights; a policy of inadequate training is more nebulous and farther removed from the constitutional violation, thus it requires more than a single incidence of unconstitutional activity); *Alston*, 2012 WL 2839825, at * 8-9 (dismissing a plaintiff's *Monell* claims alleging a county's failure to train employees because "plaintiff alleged facts relating to a specific incident as opposed to a pervasive problem with a specific County policy or custom.").

Here, Plaintiff identifies two policies for which Defendant Livingston may be liable for in his official capacity. First, he alleges that Defendant Livingston failed to prohibit a pattern and practice, and failed to train his subordinates to comply with procedures set out in California Penal Code §§ 821, 822, and 1296b. FAC ¶ 43. Second, Plaintiff argues, for the first time in his opposition, that Defendant Livingston failed to train his subordinates to follow a policy of verifying the validity of a 28-year old warrant or the documents used to take an arrestee into custody. Opp. at 12-13. Plaintiff's *Monell* claim fails under either argument because he has alleged only a single incidence – his 2011 detention – as evidence of a policy. This is insufficient to establish a pattern for *Monell* liability where the plaintiff's claims are based on an alleged failure to train. *See Tuttle*, 471 U.S. at 823-24. This is particularly so where, as noted above, there is no factual basis to assume that Livingston, as the Sheriff of the County, had any knowledge of a pattern of violations like those alleged in this suit.

As noted above, Plaintiff's *Monell* liability also fails under a theory of failure to train because Plaintiff failed to allege facts indicating that Livingston was aware of the alleged pattern of

constitutional violations. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, ⎯⎯ U.S. ⎯⎯, 131 S. Ct. 1350, 1360 (2011) (quoting *Board of Comm'rs of Bryan Cnty.*, 520 U.S. 397, 407 (1997)). Here, Plaintiff does not allege facts indicating that Defendant was placed on notice that prisoners were being taken into custody on invalid or erroneous documents, let alone that Defendant continued to adhere or enforce these allegedly unconstitutional customs or actions in light of such knowledge.

As to the failure to train, Plaintiff argues that the contrast between the 2011 incident where he was transferred to Los Angeles, and his 1995 and 1999 arrests where he was not, gives rise to an inference that "long standing procedures to verify the validity of out county [sic] warrants was [sic] abandoned." Opp. at 10:13-14. Rather than supporting Plaintiff's argument, however, the 1995 and 1999 incidents actually undermine the argument that a pattern or custom exists; nor does it establish a failure to train. If anything, these prior instances in the absence of evidence of other recent incidences, suggest nothing more than this was an isolated action of employees. *See Harris*, 489 U.S. at 391 (an argument that an injury or accident could have been prevented had there been better or more training to avoid this injury could almost always be made, but that does not speak to the adequacy of the program. Even adequately trained employees occasionally make mistakes, but that does not speak to the training program or the legal basis for *Monell* liability.); *see also Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) ("proof of random acts or isolated events are insufficient to establish custom" for *Monell* liability) *overruled on other grounds by Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010); *Blankenhorn v. City of Orange*, 485 F.3d 463, 484-85 (9th Cir. 2007) ("absent evidence of a program-wide inadequacy in training, any shortfall in a single officer's training can only be classified as negligence on the part of the municipal defendant – a much lower standard of fault than deliberate indifference.").

Even if Plaintiff had sufficiently alleged Livingston's connection to a policy or practice of failing to properly follow §§ 821, 822, and 1296b, his claim would still fail because it appears that there was in fact no violation of those sections. Both Bledsoe's arrest report and the CLETS report indicate that Plaintiff had an outstanding felony warrant. While the crime that was the basis for the

warrant was in fact a misdemeanor, Plaintiff does not contend that he informed any of Livingston's subordinates of this fact, and it appears that they would have no indication of this error since the documents relied upon stated there was a felony warrant. Out of county felony warrants are governed § 821. Unlike out of county misdemeanor warrants, individuals arrested on an out of county felony warrant are *not* entitled to a magistrate hearing in the county of their arrest, but instead must be transferred to the county that issued the warrant within five days, where they are then entitled to a magistrate hearing.[8] *See* Cal. Penal Code §§ 821 and 822. Here, Plaintiff was transferred to Los Angeles County within five days, where he was then given a hearing before a magistrate. Livingston's subordinates, therefore, provided Plaintiff all process he was due under § 821.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Livingston's motion to dismiss the claims against him in both his individual and official capacities. The dismissal is without prejudice (*see* n.4 *supra*).

This order disposes of Docket No. 51.

IT IS SO ORDERED.

Dated: August 2, 2013

_____
EDWARD M. CHEN
United States District Judge

---

[8] The Court does note that the form provided to Plaintiff informing him of his right to request a hearing before a magistrate was poorly laid out and confusing. While the form notifies an arrestee of his right to a magistrate hearing, it fails to clearly provide instructions regarding how an arrestee should request for such a magistrate hearing should he or she elect for one. *See* Docket No. 54, Ex. D. Rather, the form provides an area with four numbered lines to list the warrants an arrestee is arrested on. *Id.* To the far right of each line are the words "do / do not." *Id.* Presumably, an arrestee is to select either "do" or "do not" to indicate their preference for a magistrate hearing. However, without more context or explanation, the meaning and significance of the "do / do not" is unclear. This form thus raises concerns that an arrestee might not be adequately given notice of how to exercise the right to appear before a magistrate. Nevertheless, since Plaintiff here was not entitled to a magistrate hearing in Contra Costa County, this Court need not address the constitutional adequacy of this form. The County would do well to revise and clarify the form.